**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar # 127425
555 University Avenue, Suite # 270
Sacramento, California 95825
Telephone: (916) 444-5678

**THE SCHAPS LAW OFFICE, A.P.C.**
MICHAEL A. SCHAPS, State Bar # 247423
732 3rd Street, Suite B
Davis, CA 95616
Telephone: (530) 238-5111
Facsimile: (530) 231-2829

Attorney for Plaintiff,
WENDELL TRAYVON MARTIN, deceased, by and through RAYMOND MARTIN, as Successor in Interest; RAYMOND MARTIN, Individually

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WENDELL TRAYVON MARTIN, deceased, by and through RAYMOND MARTIN, as Successor in Interest; and RAYMOND MARTIN, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF KINGS; DAVID ROBINSON, Sheriff-Coroner-Public Administrator, Kings County; KIM PEDREIRO, Jail Commander, Kings County Sheriff's Department; Detention Sergeant ROBERT VASQUEZ; Detention Deputy MARYA RAZO; Detention Deputy RODOLFO BEJARANO; Detention Senior Deputy JOSHUA COTA; Detention Sergeant HUMBERTO HERNANDEZ; Detention Deputy BRIAN DAVIS; Detention Senior Deputy CRAIG HOUSTON(ID # 5314); Detention Senior Deputy RUBEN GONZALEZ; Detention Deputy BRIANNA BROOKS; Detention Deputy EMMANUEL | NO. 1:20-cv-00288-DAD-BAM<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND STATE LAW**<br><br>**JURY TRIAL DEMANDED** |

Wendell Trayvon Martin Complaint for Damages

1

DIAZ; Detention Deputy PATRICK FOWLER; Registered Nurse ALAN V. AGUILAR; NAPHCARE, INC.; NAPHCARE U.S., INC.; Licensed Vocational Nurse TIFFANY MENDONCA; JEFFREY ALVAREZ M.D.; Registered Nurse ALICIA CLARKE; and DOES 1 through 60, inclusive,

    Defendants.

_____/

Plaintiff complains and alleges as follows:

# I. JURISDICTION

1. This Complaint seeks damages pursuant to Title 42 U.S.C. sections 1983 and 1988, for the violation of plaintiff's civil rights and for violations of California State Law. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343. This Court has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. section 1367.

# II. VENUE

2. Plaintiff's claims, alleged herein, arose in the County of Kings, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

# III. INTRODUCTION

3. This action stems from Wendell Trayvon Martin's death at the Kings County Jail on February 24, 2019. Martin, a pre-trial detainee who suffered from severe mental illness, experienced a medical and psychiatric crisis on February 24, 2019. He was sweating profusely and in obvious medical and psychiatric distress. But instead of recognizing Martin's grave condition and providing appropriate treatment, jail staff exhibited deliberate indifference to his medical needs by a dozen deputies acting jointly using unreasonable and unconstitutional force in placing Martin into a restraint chair. They did not remove the decedent from the restraint chair for hours, at which point rigor mortis had already set in.

Wendell Trayvon Martin Complaint for Damages

2

## IV. PARTIES

4. The Plaintiff is a United States Citizen.

5. Plaintiff Raymond Martin is decedent's father and next of kin. He is decedent's successor in interest under California state law. Raymond Martin is suing individually and as successor in interest to Wendell Martin pursuant to California Code of Civil Procedure §§ 377.10 et seq.

6. Plaintiff Raymond Martin is bringing this action pursuant to California Code of Civil Procedure sections 377.20 et seq. and 377.60 which provide for survival and wrongful death actions. Plaintiff also is bringing claims on behalf of his deceased son under 42 U.S.C. sections 1983 and 1988, for violations of the United States Constitution and federal civil rights law.

7. The declaration required under California Code of Civil Procedure section 377.32 for persons bringing an action as a decedent's successor in interest is Attachment 1 to this Complaint.

8. Plaintiff Raymond Martin is bringing survival causes of action in this matter on behalf of Wendell Trayvon Martin pursuant to California Code of Civil Procedure sections 377.10 et seq. and is suing individually for the wrongful death of his son, and for the violation of his civil rights.

9. Defendant County of Kings (Hereinafter, Kings County) is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California.

10. Defendant Kings County operates and manages the Kings County Jail and is, and was at all times mentioned herein, responsible for the actions or inactions of its employees and agents, and the policies, procedures and customs/practices at the jail which led to and/or caused the violations alleged herein.

11. Defendants NaphCare, Inc. and/or NaphCare U.S., Inc. (Hereinafter, collectively referred to as NaphCare) is an Alabama Corporation doing business in the state of California. In the context of this litigation, NaphCare is a person. NaphCare provided

1  the medical services, including mental health services, with the Kings County Jail through a
2  contract with Kings County.

3  12. Defendant David Robinson is, and was at all times mentioned herein, the
4  Sheriff-Coroner-Public Administrator of the County of Kings and an employee of Kings
5  County. Robinson was the designated Facility Administrator pursuant to Title 15. At all
6  relevant times he was acting in the course and scope of that position and acting under color
7  of state law. Defendant Robinson is being sued in his individual and official capacity.

8  13. Defendant Kim Pedreiro was at all times mentioned herein employed by
9  Kings County and was the Kings County Sheriff's Department Jail Commander. At all
10 relevant times, she was acting in the course and scope of that employment and under color
11 of state law. She is being sued in her official and individual capacity.

12 14. Robert Vasquez was at all times mentioned herein a Kings County Sheriff's
13 Department Deputy Detention Sergeant employed by Defendant Kings County. At all
14 relevant times, Defendant Vasquez was acting in the course and scope of that employment and
15 under color of state law. He is being sued in his individual capacity.

16 15. Marya Razo was at all times mentioned herein a Kings County Sheriff's
17 Department Detention Deputy employed by Defendant Kings County. At all relevant times,
18 Defendant Razo was acting in the course and scope of that employment and under color of
19 state law. She is being sued in her individual capacity.

20 16. Rodolfo Bejarano was at all times mentioned herein a Kings County Sheriff's
21 Department Detention Deputy employed by Defendant Kings County. At all relevant times,
22 Defendant Bejarano was acting in the course and scope of that employment and under color of
23 state law. He is being sued in his individual capacity.

24 17. Joshua Cota was at all times mentioned herein a Kings County Sheriff's
25 Department Senior Detention Deputy employed by Defendant Kings County. At all relevant
26 times, Defendant Cota was acting in the course and scope of that employment and under color
27 of state law. He is being sued in his individual capacity.

28

18. Humberto Hernandez (Initially sued as, First Name Unknown Hernandez) was at all times mentioned herein a Kings County Sheriff's Department Deputy Detention Sergeant employed by Defendant Kings County. At all relevant times, Defendant Hernandez was acting in the course and scope of that employment and under color of state law. Hernandez is being sued in his individual capacity.

19. Brian Davis (ID # 416) was at all times mentioned herein a Kings County Sheriff's Department Detention Deputy employed by Defendant Kings County. At all relevant times, Defendant Davis was acting in the course and scope of that employment and under color of state law. He is being sued in his individual capacity.

20. Craig Houston (ID # 5314) (Initially sued as, First Name Unknown Houston) was at all times mentioned herein a Kings County Sheriff's Department Senior Detention Deputy employed by Defendant Kings County. At all relevant times, Defendant Houston was acting in the course and scope of that employment and under color of state law. Houston is being sued in his individual capacity.

21. Ruben Gonzalez (Initially sued as, First Name Unknown Gonzales) was at all times mentioned herein a Kings County Sheriff's Department Detention Deputy employed by Defendant Kings County. At all relevant times, Defendant Gonzalez was acting in the course and scope of that employment and under color of state law. Gonzalez is being sued in his/her individual capacity.

22. Brianna Brooks was at all times mentioned herein a Kings County Sheriff's Department Detention Deputy employed by Defendant Kings County. At all relevant times, Defendant Brooks was acting in the course and scope of that employment and under color of state law. She is being sued in her individual capacity.

23. Emmanuel Diaz (Initially sued as, First Name Unknown Diaz) was at all times mentioned herein a Kings County Sheriff's Department Detention Deputy employed by Defendant Kings County. At all relevant times, Defendant Diaz was acting in the course and scope of that employment and under color of state law. Diaz is being sued in his/her individual capacity.

Wendell Trayvon Martin Complaint for Damages

1     24.    Patrick Fowler (Initially sued as, First Name Unknown Fowler) was at all
2 times mentioned herein a Kings County Sheriff's Department Detention Deputy employed by
3 Defendant Kings County. At all relevant times, Defendant Fowler was acting in the course
4 and scope of that employment and under color of state law.  Fowler is being sued in his/her
5 individual capacity.
6     25.    Does 1-10 are Kings County Sheriff's Department Detention Deputies who
7 participated in the placement of decedent in the restraint chair on February 24, 2019.  The true
8 names and identities of Does 1-10 are presently unknown to Plaintiff.  These Doe defendants
9 were acting in the course and scope of their employment, under color of state law and are
10 being sued individually.  Plaintiff will seek to amend this Complaint as soon as the true names
11 and identities of Does 1-10 are ascertained.
12     26.    Does 11-20 are Kings County Sheriff's Department Detention Deputies who
13 were responsible for the care and custody of decedent while at the Kings County Jail,
14 including classification of housing assignments, performing safety checks and referring
15 inmates for necessary medical and mental health services.  The true names and identities of
16 Does 11-20 are presently unknown to Plaintiff.  These Doe defendants were acting in the
17 course and scope of their employment, under color of state law and are being sued
18 individually.  Plaintiff will seek to amend this Complaint as soon as the true names and
19 identities of Does 11-20 are ascertained.
20     27.    Does 21-30 were employees of the Kings County Sheriff's Department
21 responsible for the supervision, training and discipline of individually named Kings County
22 Sheriff's Department employees and Does 1-20.    The true names and identities of does 21-
23 30 are presently unknown to Plaintiff.  These Doe defendants were acting in the course and
24 scope of their employment, under color of state law and are being sued individually.  Plaintiff
25 will seek to amend this Complaint as soon as the true names and identities of Does 21-30 are
26 ascertained.
27     28.    Does 31-40 were employees of the Kings County Sheriff's Department
28 responsible for the promulgation and/or adoption of the policies and procedures and/or

1  permitted the customs/practices pursuant to which the acts alleged herein were committed.
2  The true names and identities of does 31-40 are presently unknown to Plaintiff.  These Doe
3  defendants were acting in the course and scope of their employment, under color of state law
4  and are being sued individually.  Plaintiff will seek to amend this Complaint as soon as the
5  true names and identities of Does 31-40 are ascertained.

6      29.    Dr. Jeffrey Alvarez was at all times mentioned herein an employee of
7  NaphCare and its Western Regional Medical Director.  At all relevant times he was acting in
8  the course and scope of his employment and under color of state law.  Dr. Alvarez was
9  personally involved with the care of Martin. He is presently being sued in his individual
10 capacity.

11      30.    Registered Nurse Alicia Clarke was at all times mentioned herein an employee
12 of NaphCare and its Western Regional Jail Director.  At all relevant times she was acting in
13 the course and scope of her employment and under color of state law.  She is presently being
14 sued in her individual capacity.

15      31.    Registered Nurse Alan V. Aguilar was at all times mentioned herein an
16 employee of NaphCare.  At all relevant times he was acting in the course and scope of his
17 employment and under color of state law.  He is being sued in his individual capacity.

18      32.    Licensed Vocational Nurse Tiffany Mendonca was at all times mentioned
19 herein an employee of NaphCare.  At all relevant times she was acting in the course and scope
20 of his employment and under color of state law.  She is being sued in her individual capacity.

21      33.    Doe 41 was an employee of NaphCare, and the designated Program Director of
22 Medical Services at the Kings County Jail as specified by Title 15 of the California
23 Administrative Code.   The true name and identity of defendant Doe 41 is presently unknown
24 to Plaintiff.  At all relevant times, Defendant Doe 41 was acting in the course and scope of
25 his/her employment and under color of state law and is being sued in his/her individual
26 capacity.  Plaintiff will seek to amend this Complaint as soon as the true name and identity of
27 Doe 41 is ascertained.
28

Wendell Trayvon Martin Complaint for Damages

7

1    34.    Doe 42 was an employee of NaphCare, and the designated Responsible Physician at the Kings County Jail as specified by Title 15 of the California Administrative Code.  The true name and identity of defendant Doe 42 is presently unknown to Plaintiff.  At all relevant times, Defendant Doe 42 was acting in the course and scope of his/her employment and under color of state law and is being sued in his/her individual capacity.  Plaintiff will seek to amend this Complaint as soon as the true name and identity of Doe 42 is ascertained.

35.    Doe 43 was an employee of NaphCare, and the designated Mental Health Program Director at the Kings County Jail as specified by Title 15 of the California Administrative Code.  The true name and identity of defendant Doe 43 is presently unknown to Plaintiff.   At all relevant times, Defendant Doe 43 was acting in the course and scope of his/her employment and under color of state law and is being sued in his/her individual capacity.  Plaintiff will seek to amend this Complaint as soon as the true name and identity of Doe 43 is ascertained.

36.    Does 44-46 were employees of NaphCare and were responsible for the promulgation and/or adoption of the medical/mental health policies and procedures and/or permitted the customs/practices pursuant to which the acts and/or omissions alleged herein were committed.  The true name and identity of defendant Does 44-46 is presently unknown to Plaintiff.  At all relevant times, Defendant Does 44-46 were acting in the course and scope of their employment and under color of state law and are being sued in their individual and/or official capacities.  Plaintiff will seek to amend this Complaint as soon as the true names and identities of Does 44-46 are ascertained.

37.    Does 47-50 were employees of NaphCare and were responsible for the supervision, training and discipline of the individually named NaphCare defendants and Does 51-60.    The true names and identities of Does 47-50 are presently unknown to Plaintiff. These Doe defendants were acting in the course and scope of their employment, under color of state law and are being sued individually.  Plaintiff will seek to amend this Complaint as soon as the true names and identities of Does 47-50 are ascertained.

38. Does 51-60 were employees of NaphCare who provided medical/mental health services and/or functions relating to decedent at the Kings County Jail.  These Doe defendants were acting in the course and scope of their employment, under color of state law and are being sued individually.  Plaintiff will seek to amend this Complaint as soon as the true names and identities of Does 51-60 are ascertained.

## V. EXHAUSTION OF PRE-LAWSUIT PROCEDURES

39. Plaintiff filed governmental tort claims with Kings County on August 16, 2019, as a pre-requisite to the state law claims alleged herein. Kings County mailed notice of rejection of Plaintiff's claims on October 9, 2019.

## VI.  FACTUAL ALLEGATIONS

40. Wendell Trayvon Martin died at the Kings County Jail on February 24, 2019.

41. At the time of his death he was 50-years-old, stood approximately 5'10" and weighed 184 pounds.

42. Martin was a pretrial detainee who had been in custody since approximately January 12, 2019.

43. Martin had a long history of severe mental illness, which included multiple psychiatric hospitalizations.  He was much better able to function when on anti-psychotic medications.  This information was known to defendants at the time of his death.

44. During his incarceration at the Kings County Jail, Martin never saw a psychiatrist, and, therefore, never received any necessary psychiatric medications.

45. Kings County Jail is classified as a Type 2 facility which means it is used to house both sentenced prisoners and pretrial detainees.

46. The Kings County Jail is staffed by Kings County Sheriff's Department Detention Deputies and Sergeants.

47. At the time of this incident, medical care and treatment was provided to Kings County Jail inmates by employees and/or agents of NaphCare. NaphCare is a for-profit Company where decisions are guided by maximizing financial profit rather than patient care or budgetary constraints.

48. Title 15 of the California Administrative Code sets forth various requirements and guidelines as to the administration and operation of jails in California including Kings County Jail.

49. The "Jail Policies and Procedures Defendants" who are Kings County, NaphCare, David Robinson, Kim Pedreiro and Does 31-46, are responsible for promulgating the jail's policies which are required to be consistent with Title 15, state law and the United States Constitution.

50. The "Jail Supervisory Defendants" are David Robinson, Kim Pedreiro, Deputy Detention Sergeants Vasquez and Hernandez and Does 31-40 were responsible for the supervision, training and discipline of the Kings County Jail Detention Deputies, including Vasquez, Razo, Bejarano, Cota, Hernandez, Davis, Houston, Gonzalez, Brooks, Diaz, Fowler, and Does 1 through 20.

51. The "NaphCare Supervisory Defendants" are Dr. Alvarez, Nurse Clarke, Does 41-43 and Does 47-50 and were responsible for the supervision, training and discipline of NaphCare employees at the Kings County Jail, including Defendants Aguilar, Mendonca and Does 41-50.

52. Restraint chairs are devices used in which inmates are strapped, chained and shackled to a rigid wheel-mounted chair which prevents a person from moving his limbs and extremities or changing his position. Typically, these chairs come with a variety of straps and fastening attachments as well as providing points of attachments for other restraint devices, such as chains and shackles, which were apparently utilized in this case. The abuse of restraint chairs in custodial facilities is well known and documented. The inappropriate use of restraint chairs has been associated with multiple inmate deaths and injuries in California. Title 15 specifically addresses the use of restraint devices in recognition of both danger of their use and the temptation to use them as punishment and/or a substitution for treatment. Despite this statutory proscription, Kings County policy and documentation seems to suggest that they can ignore this by sophistically calling their chair a "therapeutic restraint chair".

1    53.     On February 24, 2019, Martin was in extreme psychiatric and physical
2 distress.  His bizarre behavior included incessantly walking in circles  and repetitively taking
3 off and putting on his clothing.  He was not communicative.  Martin's mental illness had
4 been apparent to other inmates and custody staff for an extended period of time, but had
5 taken a dramatic turn for the worse on the 24th.
6    54.     Martin still had not been seen by a psychiatrist or been put back on any
7 psychiatric medications, although the need for both of those was documented in NaphCare's
8 medical records over a month earlier.  On the date of his death, Martin responded in a
9 paranoid manner while being approached by two correctional staff members to purportedly
10 discuss his behavior.  Rather than summoning medical/mental health care for Martin, the
11 correctional staff responded with somewhere between ten and fourteen officers who
12 swarmed Martin who was lying defenseless and non-aggressively on the floor.  The
13 specifics of what the mass of deputies did to Martin is not fully discernable from the limited
14 documentation available to Plaintiff; however, it is believed there is video and possibly
15 audio depicting the assault.  Apparently, the deputies' actions included Sergeant Hernandez
16 choking Martin for approximately five minutes while he was already restrained, which in
17 reports is euphemistically referred to as a "gill grab," and Deputy Houston apparently struck
18 Martin in the chest with a baton while he was already restrained in the chair, which was
19 referred to in reports as a "Yawara" strike, which is the name for a technique of striking
20 individuals with a baton or stick.
21    55.     Both the decision to place Martin in a restraint chair and apparently the
22 means by which the Detention Deputies did so was tacitly and explicitly approved by
23 defendants Mendonca and Alvarez, who were personally present while this was occurring.
24 Based on information and belief, neither sought the approval of a physician as required by
25 Title 15.  Apart from the deliberate indifference to Martin's well-being that this showed, it
26 was professionally negligent in failing to provide or call for the immediate life-saving efforts
27 that were necessary.  Defendants failed to obtain proper medical clearance as required by
28 Title 15 and the Jail's own policies.

56. This was at least the second time that Martin had been placed in a restraint chair during his incarceration at the Kings County Jail. On information and belief, that experience contributed to the fatal outcome in this case.

57. Defendants failed to comply with the Kings County Sheriff's Department's own policies regarding the use of restraint chairs and monitoring of individuals placed in restraint chairs. To the extent that Wendell Trayvon Martin was afforded any medical monitoring whatsoever, it was conducted by personnel operating beyond their licensed scope of practice. Defendants' actions and inactions violated 15 C.C.R. section 1058, et seq.

58. As the direct and proximate result of Defendants' actions and failures to act, Wendell Trayvon Martin died painfully while in the restraint chair. Defendants found him lifeless in the restraint chair roughly two hours after he was strapped into it.

59. Incredibly, for several hours after Martin died, correctional and medical staff continued to document Martin as being alive and well, though restrained. When the Hanford Fire Department paramedics arrived, they were perplexed to find that rigor mortis had already set in on Martin's dead body.

60. Post event attempts to obscure the wrongful conduct that caused Martin's death included Mendonca and Alvarez changing and creating new medical documentation and, curiously and inexplicably, no one telling the Coroner Investigator or pathologist of any information concerning Martin's having either been placed in a restraint chair or brutally assaulted prior to dying.

61. As a direct consequence of the multiple assaultive actions inflicted upon him, Martin experienced conscious, excruciating pain and suffering.

62. Plaintiff, as the decedent's successor in interest, is entitled to recover survival damages on behalf of Martin. These include compensation for Martin's conscious pain and suffering, as well as for his loss of life and loss of enjoyment of life. Additionally, these include funeral and burial expenses.

63. Plaintiff, as the decedent's successor in interest, is also entitled to recover wrongful death damages for the loss of his son. These include the loss of his son's love, companionship, comfort, affection, society, services, solace, and moral support.

64. Plaintiff has suffered and seeks damages for the loss of his familial relationship with his son, including loss of love, companionship, association comfort, affection, society, services, solace, and moral support.

## VII.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Deliberate Indifference to
Serious Medical Needs, Health and Safety 8th/14th Amendments
(Survival Action – 42 U.S.C. Section 1983)**
*(Against all non-governmental entity Defendants)*

65. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 64, as though fully set forth herein.

66. Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to provide Wendell Trayvon Martin with necessary psychiatric and medical care on and before February 24, 2019, and/or take other measures to prevent his death despite his obvious need for medical attention, and the acts and/or omissions of the Defendants in failing to train, supervise and/or promulgate appropriate policies and procedures at the Jail, resulted in his death. His medical symptoms, which were ignored, were an obvious and immediate threat to his health and safety. Martin's placement in a restraint chair while in a state of psychiatric emergency, as well as the force used to accomplish that, displayed a deliberate indifference to Martin's serious medical needs.

67. Defendants' conduct violated the protections that Martin was entitled to under the Eighth and Fourteenth Amendments.

68. As a direct and proximate result of Defendants' conduct, Wendell Trayvon Martin lost his life.

Wendell Trayvon Martin Complaint for Damages

13

69. As a direct and proximate result of the Defendants' conduct, Martin suffered injuries and damages as alleged herein and to which his successor in interest is entitled to recover survival damages, costs and attorney's fees.

70. The aforementioned acts and/or omissions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of decedent's rights thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

## SECOND CAUSE OF ACTION

**Unreasonable Seizure/Excessive Force/Failure to Intervene**
**(Violation of the Eighth Amendment to the U.S. Constitution:**
**Actionable under 42 U.S.C. Section 1983)**
*(Against Detention Deputy Defendants and Does 1-10)*

71. Plaintiff re-alleges and incorporates by reference paragraphs 1-70, as though fully set forth herein.

72. The actions of the Detention Deputy Defendants Vasquez, Razo, Bejarano, Cota, Hernandez, Davis, Houston, Gonzales, Brooks, Diaz, Fowler and Does 1-10 as alleged herein, interfered with the exercise and enjoyment of Martin's civil rights as guaranteed by the Fourth Amendment to the U.S. Constitution. Specifically, Defendants interfered with Plaintiff's rights when beaten, choked and placed in the restraint chair under circumstances where Plaintiff did not pose an immediate risk of harm to anyone and was in the throes of a mental health emergency, and there was no objectively reasonable justification for the use of force.

73. Defendants conduct violated Martin's rights protected by the Eighth Amendment through the Fourteenth Amendment of the United States Constitution.

74. As a direct and proximate result of said acts and/or omissions by Defendants, Martin suffered injuries and damages as alleged herein and to which his successor in interest is entitled to recover survival damages, costs and attorney's fees.

75. The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of

Wendell Trayvon Martin Complaint for Damages

the decedent, thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

### THIRD CAUSE OF ACTION
**Substantive Due Process – Loss of Family Relationships**
**(Violation of the Fourteenth Amendment to the U.S. Constitution: Actionable under 42 U.S.C. Section 1983)**
*(Against All Non-Governmental Entity Defendants)*

76. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 75, as though fully set forth herein.

77. The conduct of the defendants as alleged herein, including but not limited to the excessive and deadly force used upon Martin, caused his untimely and wrongful death and deprived the Plaintiff of his liberty interests in a family relationship with Martin, in violation of his substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

78. As a direct and proximate result of said acts and/or omissions by Defendants, decedent suffered injuries and damages as alleged herein. Plaintiff is entitled to recover and seek damages, costs and attorney's fees for the loss of the relationship.

79. The aforementioned acts and/or omissions of said Defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling Plaintiff to an award of exemplary and punitive damages against non-governmental entity Defendants according to proof.

### FOURTH CAUSE OF ACTION
**Municipal Liability - Unconstitutional Custom or Policy**
**(Survival Action - 42 U.S.C. Section 1983)**
*(Against the Jail Policies and Procedures Defendants)*

80. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 79, as though fully set forth herein.

81. Jail Policies and Procedures Defendants, who are Kings County, NaphCare, David Robinson, Kim Pedreiro and Does 31-46 have adopted a policy of improperly placing

Wendell Trayvon Martin Complaint for Damages

15

individuals in restraint chairs, permitting the use of restraint chairs as punitive or treatment tools, failing to have adequate safeguards regarding the use of restraint chairs and failing to provide for timely medical treatment and housing of individuals suffering mental health crises.

82. These policies resulted in the denial of necessary medical care for Martin and his placement in and death in a restraint chair.

83. The individually named Detention Deputy Defendants, Defendants Aguilar and Mendonca, Does 1-20 and 51-60 acted pursuant to those policies.

84. The aforementioned customs, policies, practices and procedures, or lack thereof, enabled and/or caused defendants to act with deliberate indifference to Martin's constitutional rights.

85. As a direct and proximate result of said acts and/or omissions by Defendants, decedent suffered injuries and damages as alleged herein. Plaintiffs are entitled to recover survivor death damages costs and attorney's fees.

**FIFTH CAUSE OF ACTION**
**Supervisory Liability**
**(Survival Action – 42 U.S.C. Section 1983)**
*(Against Defendants Robinson, Pedreiro, Vasquez, Cota, Hernandez, Houston, Gonzales, Brabant, Aguilar, Clarke, NaphCare, and Does 21 through 30, 41-43 and 47 through 50)*

86. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 85, as though fully set forth herein.

87. The constitutional violations alleged herein occurred as a result of the failure defendants Robinson, Pedreiro, Vasquez, Cota, Hernandez, Houston, Gonzales, Brabant, Aguilar, Clarke, NaphCare and Does 21-30 and 47-50 to adequately supervise, train, investigate and discipline subordinates' conduct.

88. Defendants Robinson, Pedreiro, Vasquez, Cota, Hernandez, Houston, Gonzales, Brabant, Aguilar, Clarke, NaphCare and Does 21-30 and 41-43 and 47-50 failed to adequately supervise, train, investigate and discipline subordinate employees in regard to preventing deliberate indifference to serious medical needs and the use of excessive force at the Kings County Jail. Said defendants' failure to supervise, investigate and discipline

Wendell Trayvon Martin Complaint for Damages

amounted to deliberate indifference to decedent's rights to be spared deliberate indifference to his serious medical needs and from excessive force.

89. As a direct and proximate result of said acts and/or omissions by Defendants, Martin suffered injuries and damages as alleged herein and to which his successor in interest is entitled to recover survival damages, costs and attorney's fees.

90. The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of the decedent, thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

**SIXTH CAUSE OF ACTION**
**Negligence/ Wrongful Death**
**(Cal. Code of Civil Procedure section 377.60 et seq.)**

91. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 90, as though fully set forth herein.

92. The acts and/or omissions of the Defendants alleged herein and detailed below caused the wrongful death of Wendell Trayvon Martin and were the direct and proximate cause of Plaintiff's injuries entitling Plaintiff to recover damages pursuant to Code of Civil Procedure sections 377.60 et seq.:

a. **Negligent Supervision, Training, Hiring and Retention (Cal. State Law)**
*(Against Defendants Robinson, Pedreiro, Vasquez, Cota, Hernandez, Houston, Gonzales, Brabant, Aguilar, Clarke and Does 21-30 and Does 41-43  47-50 )*

Defendants Robinson, Pedreiro, Vasquez, Cota, Hernandez, Houston, Gonzales, Brabant, Aguilar, Clarke, NaphCare and Does 21-30, Does 41-43 and 47-50 have a duty to hire, supervise, train, and retain employees and/or agents so that its employees and/or agents refrain from the conduct alleged herein,  but these Defendants breached that duty causing the conduct alleged herein.  This breach proximately caused damages and injuries as alleged herein and resulted in the wrongful death of Martin.

b. **Failure to Furnish/Summon Medical Care (Cal. Govt. Code § 845.6)**
*(Against Detention Deputy defendants,  Does 1-20 )*

Wendell Trayvon Martin Complaint for Damages

17

Defendants had reason to know that Wendell Trayvon Martin was in need of immediate medical care for his psychiatric emergency and the Defendants failed to take reasonable action to summon such medical care or provide that care resulting in decedent's death and a violation of California State Law and specifically California Government Code section 845.6.  This conduct proximately caused damage and injuries to decedent and Plaintiff.   Kings County is vicariously liable for the conduct of the individually named Defendants it employed at the time of the Incident.  The actions of the individually named Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's  rights, thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof and as permitted by law.

  c.  **Professional Negligence/Medical Malpractice (Cal. State Law)**
(A*gainst Defendants NaphCare Aguilar, Mendonca,  Alvarez and  , and Does 1 through 10 and 21 through 40)*

Defendants' medical and psychiatric care as described herein was at a minimum negligent and to the decedent was negligent and failed to meet the professional standards of care for such treatment. These negligent acts and/or omissions were a proximate cause of Martin's death.  Plaintiff is entitled to recover damages pursuant to California Code of Civil Procedure sections 377.60 et seq.

### SEVENTH CAUSE OF ACTION
**Assault and Battery/Wrongful Death
(California State Common Law)**
*(Against Defendants Fowler, Brooks, Bejarano, Cota, Vasquez, Hernandez, Davis, Razo, Houston, Gonzalez, Brooks, Diaz and Does 1 through 10)*

93. Plaintiff re-allege and incorporates by reference paragraphs 1 through 93, as though fully set forth herein.

94. Defendants intentionally touched Wendell Trayvon Martin.

95. Defendants used unreasonable force to overcome any resistance by Wendell Trayvon Martin.

96. Wendell Trayvon Martin did not consent to the use of that force.

Wendell Trayvon Martin Complaint for Damages

1    97.    Wendell Trayvon Martin was harmed.

2    98.    Defendants' use of unreasonable force was a substantial factor in causing that
3  harm.

4    99.    Plaintiff is entitled to recover damages pursuant to Code of Civil Procedure
5  sections 377.60 et seq.

6    100.   The aforementioned acts and/or omissions of said defendants were willful,
7  wanton, malicious and done with conscious or reckless disregard for the rights and safety of
8  the decedent, thereby entitling Plaintiffs to an award of exemplary and punitive damages
9  according to proof.

**EIGHTH CAUSE OF ACTION**
**Americans With Disabilities Act**
*(Against Defendant Kings County only)*

101.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 100, as though fully set forth herein.

102.   Wendell Trayvon Martin suffered from a mental illness or mental illnesses that substantially limited at least one major life activity.  Accordingly, he was an individual with a disability under the ADA. In addition, Defendants regarded Wendell Trayvon Martin as having impairment(s) that substantially limited at least one major life activity.

103.   Defendant Kings County    discriminated against Wendell Trayvon Martin on the basis of his disability.  Defendant Kings County    provided Wendell Trayvon Martin with inadequate medical care, excluded him from participation in or denied him the benefits of services, programs, or activities of the Kings County Jail, and failed to provide him with reasonable accommodations, in violation of his rights under the ADA.

104.   As a direct and proximate result of said acts and/or omissions by Defendant Kings County, Martin suffered injuries and damages as alleged herein and to which his successor in interest is entitled to recover survival damages, costs and attorney's fees.

Wendell Trayvon Martin Complaint for Damages
19

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2. For punitive and exemplary damages against each named Defendant(s), other than governmental entities, in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

3. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law;

4. For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Dated: August 17, 2020                               Respectfully submitted,

                                                     /s/ Stewart Katz
                                                     STEWART KATZ,
                                                     Attorney for Plaintiffs

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury.

Dated: August 17, 2020                               Respectfully submitted,

                                                     /s/ Stewart Katz
                                                     STEWART KATZ,
                                                     Attorney for Plaintiffs

Wendell Trayvon Martin Complaint for Damages